IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **BRANDI L. BEDNORZ,**<br>*Plaintiff,* | § § § | |
| **v.** | § § § | MO:22-CV-00111-DC |
| **COMMISSIONER OF SOCIAL SECURITY,**<br>*Defendant.* | § § § § | |

# ORDER

BEFORE THE COURT is United States Magistrate Judge Ronald C. Griffin's Report and Recommendation ("R&R") filed in the above-captioned cause on August 8, 2023, in connection with Brandi L. Bednorz's social security appeal of a final decision of the Social Security Administration's Commissioner. After considering the R&R and the parties' briefing, the Court finds that the Social Security Commissioner's decision should be **AFFIRMED** and therefore **ADOPTS** the R&R's ultimate recommendation.

## BACKGROUND

Bednorz applied for disability insurance benefits due to her relapsing remitting and multiple sclerosis, polycystic ovarian syndrome, and endometriosis. Bednorz was born on August 12, 1979, has a college education, and was previously employed as a dental hygienist. After a hearing, an Administrative Law Judge declined Bednorz's claim finding that she was able to perform sedentary work during the relevant period and therefore did not possess a disability under the meaning of the Social Security Act. Bednorz then sought out the Social Security Administration's Appeals Council who declined to review Bednorz's application

seeing no basis to change the ALJ's decision. At this point, the ALJ's decision became the final decision of the Commissioner.[1] In May 2022, Bednorz asked this Court to reverse the ALJ's decision.[2] Recently, the magistrate judge entered his R&R pursuant a standing order of referral under 28 U.S.C. § 636.[3]

## Legal Standard

*I.     Objections to R&R*

A party may contest an R&R by filing written objections within fourteen days of being served with a copy of the R&R.[4] A party's objections to an R&R entitle it to a de novo review of those claims by a district court.[5] But objections must specifically identify those findings or recommendations to which the party objects.[6] The district court need not consider frivolous, conclusive, or general objections.[7]

Bednorz timely filed her objections on August 17, 2023.[8] She ultimately objected to the magistrate judge's findings (1) that the ALJ's decision was supported by substantial evidence, (2) that the ALJ applied the correct legal standard to determine Bednorz did not qualify as disabled under the Act, and (3) that the ALJ's consideration of a medical opinion and consultation that she found unpersuasive—unpersuasive because it considered findings

---

[1] *Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) (citation omitted).
[2] ECF No. 1.
[3] ECF No. 20
[4] *See* 28 U.S.C. § 636(b)(1).
[5] *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).
[6] FED. R. CIV. P. 72(b)(2).
[7] *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419 (5th Cir. 1987).
[8] ECF No. 21.

after the relevant period—though undesirable, amounted to harmless error. De novo review by this Court was, therefore, triggered as to these objections alone.[9]

The rest of the R&R is reviewed for clear error.[10] After due consideration, the Court is of the opinion that any remaining portions of the magistrate judge's R&R, to which neither side objected, are neither clearly erroneous nor contrary to law.

## II. ALJ's Decision

Judicial review of the Commissioner's final decision under the Social Security Act[11] is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner correctly applied the relevant legal standards.[12] Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13]

The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[14] But the reviewing court may not re-weigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner.[15] The Court may only scrutinize the record to determine whether it

---

[9] *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).
[10] 28 U.S.C. § 636(b)(1)(C).
[11] 42 U.S.C. § 405(g).
[12] *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).
[13] *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).
[14] *Id.* at 174.
[15] *Id.*

contains substantial evidence to support the Commissioner's decision.[16] If the Court finds substantial evidence to support the decision, the Court must uphold the decision.[17]

No similar deference is given to the Commissioner's conclusions of law, including the proper standards to be applied in reviewing claims.[18] If the Commissioner fails to apply the correct legal standards or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[19]

## DISCUSSION

The Social Security Act defines *disability* as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."[20] To determine disability, the ALJ uses a sequential, five-step approach, which considers whether:

> (1) the claimant is currently engaged in substantial gainful activity, (2) she has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents her from doing any relevant work.[21]

---

[16] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).
[17] *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990); 42 U.S.C. § 405(g).
[18] *Wheat v. Barnhart*, 318 F. Supp. 2d 358, 361 (M.D. La. 2004) (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).
[19] *Id.* (citing *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir.1981).
[20] 42 U.S.C. § 423(d)(1)(A).
[21] *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021).

The claimant bears the burden of proof for the first four steps but the burden shifts to the agency at step five.[22] A finding at any step that a claimant is or is not disabled ends the analysis.[23]

Here, the ALJ properly worked through the five-step approach to determine Bednorz's status. Bednorz's appeal and objections arise at the third step and concern the ALJ's determination of Bednorz's *residual functional capacity*.[24] Though Bednorz articulates her position in various ways throughout her briefing and objections, the "entire thrust of her argument is that the ALJ's RFC determination failed both the supportability and consistency standard."[25] Without full support and consistency among the record, Bednorz argues, the ALJ lacked substantial evidence to form her decision.[26] *Supportability* and *consistency* are two of five factors examined by the ALJ to determine whether a claimant qualifies for benefits despite suffering impairments not listed in the regulations.

The Court begins and ends its analysis with whether the ALJ properly determined Bednorz's RFC. Review of the administrative record shows that the ALJ properly used the correct legal standard, and that substantial evidence supports her findings.

## I.     Residual Functional Capacity

A claimant's RFC is "the most [she] can still do" despite any physical or mental limitations caused by her "impairments and any related symptoms."[27] The ALJ only seeks to determine a claimant's RFC when the claimant's impairment does not meet or equal a listed

---

[22] *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016).
[23] *Id.*
[24] *See* 20 C.F.R. § 404.1520(a)(4).
[25] ECF No. 21 at 3. (cleaned up).
[26] *Id.*
[27] § 404.1545(a)(1).

impairment.[28] To do so, the ALJ assesses "all the relevant medical and other evidence in [the] case record."[29] Medical evidence includes "the testimony of physicians and the claimant's medical records."[30]

The Court nods to the magistrate judge for producing a thorough primer on RFC determination and rehashes that section here.[31] To determine an applicant's RFC, the ALJ examines the evidence before it for its persuasive value.[32] As of March 2017, this examination no longer allows the ALJ to give controlling weight to a treating physician's medical opinion.[33] Instead, the ALJ more broadly considers the persuasiveness of "all medical opinions and prior administrative medical findings" against five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.[34]

And the ALJ need only explain the supportability and consistency of these opinions and administrative findings.[35] "Supportability looks internally to the bases presented by the medical opinion itself while consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical

---

[28] § 404.1520(e).
[29] § 404.1520(e).
[30] *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021).
[31] ECF No. 19 at 7, 8.
[32] 20 C.F.R. § 404.1545(a)(3).
[33] *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (per curiam).
[34] *Garcia v. Saul*, No. SA-19-CV-01307-ESC, 2020 WL 7417380, at *4 (W.D. Tex. Dec. 18, 2020); 20 C.F.R. § 404.1520c(a)–(c).
[35] 20 C.F.R. § 404.1520c(b)(2); *see Morales v. Comm'r of Soc. Sec. Admin.*, No. EP-22-CV-120-FM-RFC, 2022 WL 18912157, at *1 (W.D. Tex. Dec. 5, 2022), *report and recommendation adopted sub nom. Morales v. Barnhart*, No. EP-22-CV-00120-FM, 2023 WL 2626075 (W.D. Tex. Mar. 23, 2023).

professionals."[36] Even though the ALJ no longer gives controlling weight to any one opinion, there must be a logic bridge between the evidence and the ALJ's persuasiveness findings.[37] This means that the ALJ's explanation of these two factors "must enable the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence" and "must not require the court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof."[38] Failure to address a medical opinion without explanation amounts to legal error.[39]

Here, the ALJ worked her way through all five factors to determine whether Bednorz qualified. When the ALJ found that Bednorz's impairment did not meet the severity of an impairment enumerated in the relevant regulations, the ALJ proceeded to determine her RFC. After review of extensive medical evidence, state agency medical evaluations, and a medical expert opinion, the ALJ determined that, for the relevant period, Bednorz

> had the residual functional capacity to lift and carry a maximum of ten pounds occasionally. She could lift and carry less than ten pounds frequently. She could stand and walk up to two hours out of an eight-hour workday. She could sit for up to six hours out of an eight-hour workday. She required the use of a cane for ambulation. She could occasionally climb ramps and stairs. She could never climb ladders, ropes, or scaffolds. She could frequently stoop. She could occasionally balance, kneel, crouch, and crawl. She needed to avoid temperature extremes and extreme humidity. She could frequently reach, handle, finger, and feel with her bilateral upper extremities. She could occasionally push or pull with her bilateral lower extremities. She could occasionally use foot controls.

---

[36] *Morales*, 2022 WL 18912157, at *3 (citation and internal quotation marks omitted).
[37] *Chavarria v. Kijakazi*, No. EP-22-CV-00407-KC-RFC, 2023 WL 3984857, at *3 (W.D. Tex. June 13, 2023).
[38] *Id.* (cleaned up).
[39] *Sherman v. Kijakazi*, No. 1:22-CV-00775-RP-SH, 2023 WL 3727022, at *4 (W.D. Tex. Apr. 27, 2023).

The ALJ concluded that Bednorz "was not completely precluded from all work" and "was able to perform some types of sedentary work." To support her conclusion, the ALJ discussed the medical opinion and evaluations in evidence, along with Bednorz's extensive medical record, and discussed the relevant factors in doing so.[40]

Bednorz first argues that, because the ALJ found the opinion of a medical expert witness and evaluations made by Texas State agency medical consultants not fully persuasive, the ALJ surely based her decision on raw medical data alone in an impermissible exercise of her own medical judgment.[41] In Bednorz's view, a finding of anything less than 'fully persuasive' amounts to a rejection.[42] Though the Court understands the logic of this formation, Bednorz misunderstands the relevant law. True, an ALJ cannot derive an RFC based on medical evidence alone—on this, the Fifth Circuit has been clear since *Ripley*.[43] But the ALJ did not commit a *Ripley* error. Rather the ALJ merely declined to give any medical opinions controlling weight in accordance with the updated regulations. Nor does an ALJ reject a medical opinion by finding it merely persuasive.[44] "ALJs may assign more or less persuasive value to certain evidentiary sources and reach an RFC based on some, but not all, of the evidentiary record."[45] As pointed out by the magistrate judge, the ALJ considered the

---

[40] ECF No. 9-2 at 21.
[41] ECF No. 15 at 10; ECF No. 21 at 3.
[42] ECF No. 21 at 3–4.
[43] *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).
[44] *See Rodriquez v. Comm'r*, No. 4:23-CV-175-BP, 2023 WL 4207451, at *5 (N.D. Tex. June 27, 2023) (where a magistrate judge distinguished *Ripley* errors made by ALJs who reject ALL medical opinions on record from ALJs who find a doctor's medical opinion partially persuasive.)
[45] *Id.*

8

medical opinion and state consultant's evaluations when it found that Bednorz was capable of some sedentary work.[46]

The above appears to settle the focal point of the dispute, as Bednorz's argument relies on her misunderstanding the Court has just discussed But Bednorz also clarified in her objections that—rather than hearken to the prior standard as perhaps evident by Bednorz's language used and cases cited in her appeal—she intended her first argument to capture the supportability and consistency factors. Given those factors present a question of whether the relevant legal standard was applied, the Court turns to whether the ALJ properly considered the evidence before her for supportability and consistency. The Court finds that she did.

    a. *Supportability*

As to supportability, the ALJ found that the state agency medical consultants' evaluations were "well supported" despite being "made without the benefit of additional evidence available at the hearing."[47] Comparison of the ALJ's decision with the state evaluations further reveals that she considered most of the opinions on which the evaluations were made and did not make her statement by wrote or conclusory analysis.[48] Bednorz is keen to point out that the record relied on by Dr. Frey—the expert medical witness solicited by the ALJ—extended beyond the relevant period by fifteen months.[49] But the ALJ noted that this period was "not as persuasive as medical records from within the

---

[46] ECF No. 19 at 11.
[47] ECF No. 9-2 at 21.
[48] *Compare, e.g.*, ECF No. 9-3 at 7–9, 13, 14, 29, and 30 (medical appearances considered by the state agency medical consultants) *with* ECF No. 9-2 at 20–21 (medical appearances considered by the ALJ).
[49] ECF No. 21 at 9.

period" even though her "subsequent condition was generally similar."[50] Further review of the ALJ's decision reveals that she also thoroughly considered an extensive medical record, detailing at least thirteen medical appearances over the relevant period.[51] The Court agrees with Bednorz that the ALJ could have more perfectly articulated her discussion of medical opinions and evaluations before her. But "[p]rocedural perfection in administrative proceedings in not required."[52] All said, the ALJ provided meaningful review of whether her reasoning was supported by substantial evidence and did not leave the Court to merely speculate about the reasons behind the ALJ's persuasiveness findings, or lack thereof.[53]

    b. *Consistency*

As to consistency, the ALJ found consistency enough between Dr. Frey's medical opinion, the state agency evaluations, and the medical record for a persuasiveness finding. True, inconsistencies exist in the administrative record. Dr. Frey's opinion included her own medical evaluation held after the relevant period and found Bednorz capable of more than sedentary work. Bednorz is correct that Dr. Frey's late evaluation is inconsistent with the ALJ's findings. But, Dr. Frey stated in her interrogatory response that she had reviewed as instructed[54] the substantial medical record given to her by the ALJ—which included hospital

---

[50] ECF No. 9-2 at 21.
[51] *Id.* at 21–22.
[52] *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).
[53] *See Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021), report and recommendation adopted, No. 1:20-CV-166-HSO-RPM, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021) (collecting cases that describe how courts have evaluated ALJ's supportability "when there is at least some mention of medical opinion persuasiveness.").
[54] ECF No 9-26 at 29.

records dated from 2014 to 2019, some of which Dr. Frey cited in her evaluations.[55] The ALJ therefore discredited the portion of Dr. Frey's opinion that recommended that, as of her 2019 evaluation, Bednorz did not then need a cane to walk.[56] Put simply, the ALJ declined to be persuaded by this late examination given it was inconsistent with those records that indicated Bednorz indeed required a cane. [57] This cane usage appeared instrumental in the ALJ's finding that she could not perform light work and was instead limited to sedentary work. The ALJ performed a similar incision with state agency evaluations that pre-dated the ALJ hearing. The ALJ likewise found unpersuasive those parts of the agency evaluations that conflicted with a record of hospital visits that were then unavailable to the state agencies to review.[58] So though Bednorz did not have a perfectly consistent record for the ALJ to review, the ALJ satisfactorily explained her consistency determinations in satisfaction of the relevant legal standard.

## II.  Substantial Evidence

The Court may not reweigh the evidence or "substitute its judgment for that of the ALJ."[59] It may only "scrutinize the record to determine if [substantial] evidence exists" to support the ALJ's decision.[60] Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[55] ECF Nos. 9-21; 9-26 at 9.
[56] ECF Nos. 9-2 at 21; 9-26 at 23.
[57] ECF Nos. 9-2 at 21; 9-12 at 64; 9-13 at 104.
[58] *Id.*
[59] *Behrens v. Comm'r*, No. 4-21-CV-144-SDJ-CAN, 2022 WL 7353121, at *5 (E.D. Tex. July 4, 2022), *report and recommendation adopted sub nom. Behrens v. Comm'r, SSA*, No. 4:21-CV-144-SDJ, 2022 WL 4587851 (E.D. Tex. Sept. 29, 2022).
[60] *McCullough v. Berryhill*, No. SA-18-CV-00128-ESC, 2019 WL 1431124, at *3 (W.D. Tex. Mar. 29, 2019) (citing *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989)).

conclusion."[61] Here, the ALJ did not provide wrote or conclusory analysis. As made clear above, to form her decision, the ALJ considered a substantial medical record including the medical evaluations produced by state agency medical consultants, numerous hospital records, and a solicited medical opinion available. Despite the imperfections in the administrative record, the ALJ's decision was supported by substantial evidence.

Finding no error, the Court holds that the ALJ applied the correct legal standards and that substantial evidence existed for her to formulate her decision.

### III. Harmless Error

It is worth addressing Bednorz's final objection. Bednorz also objects to the magistrate judge's finding that even if the ALJ erred, such an error is harmless. Remand is warranted when the ALJ's error is harmful.[62] But the burden is on Bednorz to show that the ALJ's error was prejudicial.[63] Bednorz reiterates her position that Dr. Frey's opinion cannot be considered whatsoever because she included an evaluation beyond the scope of the relevant period. Yet as discussed by the magistrate judge, the ALJ is not required to consider and accept every limitation suggested by every medical opinion.[64] The ALJ may decline to accept a limitation if it falls outside the relevant timeframe or is otherwise inconsistent with

---

[61] *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)(internal citation and quotations omitted).
[62] *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023).
[63] *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012) (footnote omitted).
[64] ECF No. 24.

the medical evidence.[65] Moreover, an error is harmless "when it is inconceivable that a different administrative conclusion would have been reached if the ALJ did not err."[66]

If the Court had its druthers, the ALJ would have organized her analysis in a more elegant manner so that judicial review was as a simple as a snap of the fingers. Even more thoroughness might have put to rest any of Bednorz's discomfort with the Commissioner's rejection and the results of her appeal. Nevertheless, even if the ALJ had committed an error, the Court agrees with the magistrate judge that such an error would be harmless. The ALJ decided that Bednorz's limitations were more significant than recommended by the state agency medical examiners and Dr. Frey. Each indicated that Bednorz was qualified for light work, not sedentary work. As the magistrate judge reasoned, "it is difficult to discern how a finding that [Bednorz] was able to, essentially, perform *fewer* tasks than was suggested in the available medical findings and opinions would be prejudicial."[67] A finding of additional limitation produces no error.

---

[65] *See Kenneth M. v. Kijakazi*, No. 4:20-CV-01227, 2021 WL 3931057, at *6 (S.D. Tex. Sept. 2, 2021).
[66] *Chavarria v. Kijakazi*, No. EP-22-CV-00407-KC-RFC, 2023 WL 3984857, at *6 (W.D. Tex. June 13, 2023) (citing *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021)).
[67] ECF No. 19 at 26 (emphasis in original) (citing a collection of cases in support of that a finding of harmless error is appropriate where the ALJ found a more restrictive RFC than the medical record supports, *e.g.*, *Myers v. Saul*, No. SA-20-CV-445-XR, 2021 WL 4025993, at *8 (W.D. Tex Sept. 3, 2021) and *Harkins v. Comm'r*, No 6:05-CV-136, 2008 WL 2387755, at *5–6 (E.D. Tex. June 9, 2008)).

## CONCLUSION

For the reasons stated above, the Court **ADOPTS** the ultimate conclusion of the magistrate judge's R&R and **ORDERS** that the Commissioner's decision be **AFFIRMED**.

It is so **ORDERED**.

**SIGNED** this 11th day of September, 2023.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE